NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SONIA T. FERNANDES-MOREIRA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security*,<br><br>Defendant. | Civil Action No. 16-6593 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court upon the appeal of Sonia T. Fernandes-Moreira ("Plaintiff") from the final decision of the Commissioner ("Defendant") upholding Administrative Law Judge ("ALJ") Dennis O'Leary's denial of Plaintiff's application for disability insurance benefits ("DIBs") under Title II of the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions, and, for the following reasons, affirms the ALJ's decision.

## I. BACKGROUND[1]

The Court writes for the parties, who are familiar with the facts and procedural history of the case. The Court, therefore, specifically addresses only those facts relevant to the issues raised on appeal.

On October 23, 2012, Plaintiff applied for DIBs, alleging disability as of December 1, 2011 caused by tetany (muscle spasms), angioedema (hives defined by pronounced swelling),

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 5.

1

numbness, autoimmune disorder, recurrent urinary tract infection, anxiety, and scoliosis. (R. at 214, 436–46). At the time of her initial disability, Plaintiff was 30 years old. (R. at 74). Plaintiff has a high school diploma and past work experience as a realtor from 2007 to the onset of her disability in December 2011, a customer service manager from 2005 to 2006, and a customer service coordinator from 2002 to 2005. (R. at 215). Upon review of her application, the New Jersey state agency denied her claims at the initial level of administrative review and again on reconsideration of administrative review. (R. at 85–112). The agency concluded that Plaintiff either had no severe impairment or could return to her past relevant sedentary work as a cashier. (R. at 85–112).

At Plaintiff's request, ALJ O'Leary held a hearing on May 1, 2014. (R. at 70–112). The ALJ held a supplemental hearing on September 17, 2014, at which Plaintiff, Dr. Martin Fechner, a medical expert ("ME"), and Tanya Edghill, a vocational expert ("VE"), testified. (R. at 44–69). Subsequent to the second hearing, the ALJ proffered the VE interrogatories. (R. at 262–71). On December 4, 2014, the ALJ issued a Decision-Unfavorable, finding that Plaintiff could perform a range of sedentary work, including her past relevant work as a customer service representative and, therefore, was not disabled within the meaning of the Act. (R. at 18–30). The Appeals Council denied Plaintiff's request to review the ALJ's findings. (R. at 1–14). Accordingly, Plaintiff brought the pending action before this Court.

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally,

under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; 42 U.S.C. § 1382(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient

development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III. THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)–(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In <u>Step One</u>, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In <u>Step Two</u>, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In <u>Step Three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step Four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).

> If the claimant is unable to resume her former occupation, the evaluation moves to the final step [(Step Five)]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118–19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen*, 482 U.S. at 146 n. 5). Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

The ALJ engaged in the above five-step sequential evaluation and found: for Step One, that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 1, 2011, (R. at 20); for Step Two, that Plaintiff had the severe impairments of "back disorder (scoliosis)" and "urticaria (hives)," (R. at 20), and that Plaintiff's tetany, delayed pressure angioedema and numbness were nonsevere impairments, (R. at 21); for Step Three, that none of Plaintiff's impairments met or equaled the Commissioner's listed impairments, (R. at 21); for RFC, that Plaintiff has the RFC to perform sedentary work, but must avoid all exposure to extreme heat and must be able to get up and stretch every hour or so, (R. at 21); for Step Four, that Plaintiff could return to her past relevant work as a customer service representative (R. at 28–29); and, alternatively, at Step Five, even if she could not return to her past relevant work, she could perform other work including that of an order clerk, envelope addresser, and/or document preparer, (R. at 30).

At Steps Four and Five, the ALJ heard testimony of a VE at the second hearing. (R. at 66–68.). The VE classified Plaintiff's past work as a customer service representative as "semi-skilled,

sedentary work." (R. at 66). In response to questions posed by the ALJ, the VE testified that an individual of Plaintiff's vocational profile would be unable to perform Plaintiff's past work as a customer service representative because "they're kind of glued to their seat on the phone" so it would be "kind of hard to have a sit/stand option." (R. at 67). Following the hearing, the ALJ served the VE with interrogatories asking whether an individual with Plaintiff's vocational profile would be capable of performing her past work as a customer service representative. The interrogatories noted that Plaintiff must be able to perform: (1) sedentary work without exposure to extreme heat and heights, and without the use of heavy machinery; (2) work with frequent but not continual or repetitive fine fingering; and (3) work that allowed Plaintiff the ability to get up and stretch roughly every hour. (R. at 269). The VE answered that such an individual could perform the work of a customer service representative because it did not involve extreme heat or heavy equipment, required only occasional fingering, and allowed an individual to get up and stretch every hour or so. (R. at 269). The VE also identified other sedentary jobs that Plaintiff was capable of performing. (R. at 270). Based on this and other evidence in the record, the ALJ found Plaintiff not to be disabled at Step Four or, alternatively, at Step Five. (R. at 29–30). Plaintiff challenges the ALJ's findings at Step Two, Step Three, Step Four, and Step Five, as well as the ALJ's findings as to RFC. (*See* ECF No. 12 ("Pl.'s Br.") at 1).

## IV. DISCUSSION

### A. Step Two

Plaintiff raises two arguments against the ALJ's Step Two determination. First, Plaintiff argues that the ALJ's decision failed to consider her severe and nonsevere impairments that were established at the hearing. (Pl.'s Br. at 17–18). Second, the ALJ failed to properly weigh the medical evidence under the treating physician rule, which states that great weight must be given

6

to treating physicians when their findings and opinions are supported by substantial evidence in the record. (*Id.* at 20).

### 1. ALJ's Consideration of Impairments

Plaintiff argues that the ALJ only addressed urticaria and scoliosis, and did not fully and fairly address her angioedema, tetany, autoimmune disorder, numbness, recurrent urinary tract infections, anxiety attacks, and several other conditions. (Pl's Br. at 15). However, the diagnosis of Plaintiff's impairment alone does not support a conclusion that said impairment is severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("In addition to the diagnoses, Salles was required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.") (emphasis in original) (citing to 20 C.F.R. §§ 404.1520(c), 404.1521(a)).

Here, as Defendant explained, several of Plaintiff's asserted conditions are symptoms of her urticaria, including her angioedema, numbness, pain in her hands, and tetany. (ECF No. 14 ("Def's Br.") at 12). Accordingly, the ALJ accounted for these associated conditions because he considered all of the symptoms of Plaintiff's urticaria and scoliosis when he found them to be severe. (R. at 20–21). Furthermore, the ALJ addressed Plaintiff's remaining conditions by finding that they did not rise to a medically determinable impairment. (R. at 25). The ALJ relied on the ME's testimony that Plaintiff "has two main impairments, namely scoliosis and hives." (R. at 25). Even if the ALJ erred with respect to one of the impairments that he found to be non-severe, such error would be harmless as he found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in his RFC finding. *See Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing

*Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Therefore, the Court concludes that the ALJ sufficiently addressed all of Plaintiff's medical disabilities when reaching his Step Two determination.

   2. ALJ's Evaluation of the Medical Source Opinions

Plaintiff argues that the opinion of the ME, a non-examining, non-treating internal doctor at the hearing, was not entitled to greater weight than Plaintiff's treating physicians, including, for example, Dr. Kashkin, an allergist/immunologist, under the treating physician rule. (Pl.'s Br. at 7–10). The treating physician rule states that great weight must be given to a treating physician where the findings and opinions are supported by substantial evidence in the record. 20 CFR §§ 404.1513, 404.1527(d)(2). However, Plaintiff fails to consider that the ALJ is free to give a ME's testimony greater weight than a treating physician if the ALJ has reason to believe the ME's opinion has more support in the record. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 F. App'x 252, 254 (3d Cir. 2012) (stating that when the opinions of a treating and non-treating physician conflict, the ALJ may choose whom to credit so long as the ALJ provides a reason for his or her choice) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

In this case, the ALJ did not dismiss the treating physician's objective findings, but rather disagreed with them to the extent those objective findings resulted in functional limitations that would prevent Plaintiff from working in a sedentary level. (*See* R. at 28 ("While it is reasonable to find that the claimant's alleged impairments would preclude more than the full range of work, the objective evidence does not establish that the claimant would be precluded from all work activity.")). For example, Dr. Kashkin opined in a 2014 diagnosis that Plaintiff would be limited to less than sedentary work and could be incapacitated due to swelling of her fingers and feet. (R.

at 613–14). The ALJ gave Dr. Kashkin's opinion no weight because it was unsupported by the record, which showed that Dr. Kashkin had not seen Plaintiff since November 2012. (R. at 26). The ALJ also noted that Plaintiff's urticaria was episodic and resulted in no functional limitations. (R. at 26). The ALJ instead found the ME's testimony more credible because it was consistent with the findings of the state agency consultants, the medical evidence in the record, and Dr. Tiongco. (*See* R. at 28); *see also* 20 C.F.R. § 404.1527(e) (endorsing the use and reliance of MEs at administrative hearings). All three of the ME, the state agency, and Dr. Tiongco opined in the record that only Plaintiff's scoliosis and urticaria counted as severe impairments, but neither condition caused any restrictions in Plaintiff's ability to perform sedentary work. (R. at 25). Based on this record, the Court concludes that the ALJ sufficiently explained the weight he afforded both the ME's and the treating physician's opinions and, therefore, the ALJ's Step Two determination is affirmed.

## B. Step Three

For Step Three, Plaintiff argues that (1) the ALJ erred in failing to consider listings 8.00 and 14.03, and (2) the ALJ erred in discrediting Plaintiff's subjective pain complaints. (Pl.'s Br., at 22–25).

### 1. Evaluating Listed Impairments

Plaintiff argues that the ALJ did not consider listing 14.03 and failed to find that Plaintiff fit under listing 8.00.[2] (*Id.*, at 24–25). However, the ALJ is not required to use particular language

---

[2] Listing 8.00 includes several skin disorders that all require "extensive skin lesions that persist for at least three months despite continuing treatment as prescribed." 20 C.F.R. pt. 404, subpt. P., app. 1, § 8.00. Listing 14.03 is for systematic vasculitis and requires either:
    A. Involvement of two or more organs/body systems, with: (1) one of the organs/body systems involved to at least a moderate level of severity; and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). OR
    B. Repeated manifestations of systemic vasculitis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: (1)

in conducting his analysis, so long as he or she provides sufficient analysis "to permit meaningful review" by this Court. *Jones,* 364 F.3d at 505; *see also Scuderi v. Comm'r of Soc. Sec.,* 302 F. App'x 88, 90 (3d Circ. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding . . . ."). Here, the ALJ stated in his decision that "[p]articular scrutiny was given to the claimant in light of listings sections 1.00 and 8.00," which means that listing 8.00 was specifically considered in reaching his determination. (R. at 21). In reaching this decision, the ALJ relied on the testimony of the ME, which stated that Plaintiff's hives were episodic and not life threatening. (R. at 51–52). Additionally, listing 14.03 requires documentation in the form of an angiography or tissue biopsy to confirm the diagnosis, which Plaintiff does not have in this case. 20 C.F.R. pt. 404, subpt. P., app. 1, § 14.03b. Therefore, the ALJ was not required to discuss listing 14.03 in his decision. *See Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (holding that a claimant must show that all, not merely some, of the criteria for Plaintiff to fall within that listing). Based on this reasoning, the Court concludes that the ALJ sufficiently discussed his Step Three determination to permit a "meaningful review" by this Court.

2. ALJ's Evaluation of Plaintiff's Subjective Allegations

Plaintiff further argues that the ALJ wrongfully discredited her documented shoulder, back, neck, arm, and leg pain because her complaints should have been given "great weight" in the ALJ's determination. (Pl.'s Br. at 26–27). However, the ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony, regarding pain

---

limitation of activities of daily living; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.
20 C.F.R. pt. 404, sub pt. P., app. 1, § 14.03.

and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)). Here, the ALJ considered Plaintiff's alleged limitations in daily functioning, symptoms of pain and swelling, and factors that aggravated her various symptoms. (R. at 21–22). The ALJ concluded that Plaintiff's medically determinable impairments—namely, scoliosis and urticaria—could reasonably be expected to cause her alleged symptoms, but went on to hold that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 22).

The ALJ listed several reasons for his decision that Plaintiff's scoliosis and urticaria do not support a finding of debilitating pain. For Plaintiff's scoliosis, the ALJ noted that she remained physically functional with intact reflexes, strength, range of motion, and sensation. (R. at 23). Furthermore, where Plaintiff's complaints of pain from her scoliosis were supported by the record, the ALJ accounted for such complaints when he recognized Plaintiff would be limited to sedentary work with the ability to stretch every hour or so. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir.1986) (holding that the ALJ accorded due weight to assertions of pain when, after refusing to find total disability, he credited them to the extent that the claimant would be able to perform work only at a sedentary exertional level). For Plaintiff's urticaria, the ALJ noted that Plaintiff underwent treatment intermittently, her urticaria was episodic in nature, it resulted in only hives and itching, and her symptoms responded to prednisone. (R. at 24). The Court pays particular attention to the ALJ's reliance on Plaintiff's intermittent treatment, as such "gaps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then." *See Hamlin v. Comm'r of Soc. Sec.*, No. 96-3243, 1996 WL 729287, at *5 (6th Cir. Dec.17, 1996). Based on this record, the ALJ provided sufficient reasons

to reject Plaintiff's subjective pain complaints. Therefore, the Court affirms the ALJ's Step Three determination.

## C. RFC Finding

Plaintiff attacks the ALJ's RFC finding for failing to consider her non-exertional impairments and limitations, such as her reaching and grabbing abilities. (Pl.'s Br. at 30). However, the ALJ's RFC determination accounted for all of Plaintiff's "credibly-established limitations," which is all he was required to do. *Rutherford*, 399 F.3d at 554; *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x. 159, 162–63 (3d Cir. 2008) (stating that the ALJ is not required "to adhere to any set format for explaining his [or her] analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'") (quoting *Jones*, 364 F.3d at 505). As discussed above, Plaintiff's only two "credibly established limitations" were scoliosis and urticaria. The ALJ's RFC determination accounted for Plaintiff's scoliosis by reducing her capabilities to sedentary work (R. at 21, 26), which is the most accommodating classification for scoliosis under the Commissioner's guidelines. *See* 20 C.F.R. § 404.1567 (classifying work as sedentary, light, medium, heavy, and very heavy). Plaintiff was also able to "get up and stretch every hour or so" to further account for her scoliosis. (R. at 21). Additionally, the ALJ's RFC finding accounted for Plaintiff's urticaria when he determined that Plaintiff should have limited exposure to extreme heat, which would exacerbate her symptoms. (R. at 21). In reaching these decisions, the ALJ relied on the testimony of the ME and one of Plaintiff's treating physician, who both opined that Plaintiff was not limited in her ability to carry, sit, stand, or walk notwithstanding her urticaria. (R., at 25, 52, 557–58). Considering the ALJ accounted for both of Plaintiff's established limitations and based his decision on substantial evidence, the Court affirms the ALJ's RFC determination.

### D. Step Four

Plaintiff argues that the ALJ's Step Four determination was not supported by the weight of substantial evidence, because he failed to consider the VE's testimony from the hearing. (Pl.'s Br. at 31). At the hearing, the VE testified that Plaintiff's past employment required a person to be "glued to their seat." (R. at 67–68). It is true that the ALJ did not rely on this testimony in reaching his decision. (*See* R. at 29). However, as Plaintiff is aware, the ALJ relied instead on interrogatories that he sent to the VE subsequent to the hearing. (R. at 29). In response to these interrogatories, the VE indicated that the Plaintiff's past employment only required occasional fingering and allowed a person to get up and stretch every hour or so. (R. at 29). The VE further testified via interrogatories that the job did not require exposure to extreme heat, heights, or the use of heavy equipment. (R. at 29). The Court finds that the ALJ's reliance on the VE's answers to the interrogatories was reasonable because the VE's conclusion was consistent with the Dictionary of Occupational Titles ("DOT") and Plaintiff's RFC. Both the DOT and VE described the work of a customer service representative as done in a sedentary position without exposure to extreme heat and heavy lifting, which Plaintiff is capable of performing under her RFC. (R. at 29). Furthermore, the VE's testimony was directly in line with the limitations of Plaintiff's RFC which require that she be allowed to get up and stretch every hour or so. (R. at 29). Considering the ALJ sufficiently explained the reasoning for his decision and properly relied on the VE's testimony via interrogatories, the ALJ's Step Four determination is affirmed.

### E. Step Five

Although the ALJ decided the case at Step Four, he held in the alternative, at Step Five, that Plaintiff was not disabled because there were other sedentary jobs in the national economy that she could perform. (R. at 29). At Step Five, the ALJ must consider the plaintiff's RFC, age,

13

education, and work experience in conjunction with the Medical-Vocational Guidelines. 20 CFR § 404 subpt. P, app. 2. Here, Plaintiff argues that the ALJ's Step Five finding was improper because he did not consider the VE's testimony from the hearing, which stated that Plaintiff could perform "frequent but not continual and repetitive fine fingering" and that Plaintiff must "alternate sitting and standing at her election." (Pl.'s Br. at 33; *see also* R. at 60–67). However, as discussed above in Section IV.D, the ALJ did consider the VE's testimony from the hearing because he relied instead on the VE's responses to the interrogatories. (R. at 29). In the interrogatories, the ALJ had asked the VE whether jobs existed in the national economy for an individual with the plaintiff's age, education, work experience, and RFC. (R. at 31). The VE responded that such an individual could perform the requirements of an order clerk, envelope addresser, and document preparer. (R. at 31). The ALJ found that this testimony was consistent with the information contained in the DOT regarding sedentary jobs with Plaintiff's RFC, and determined that Plaintiff could perform jobs available in the national economy. (R. at 31).

The VE's testimony provided substantial evidence for the ALJ's determination, because the VE's answers were based on Plaintiff's RFC, which was based on her established disabilities of scoliosis and urticaria. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *see also Rutherford*, 399 F.3d at 554 (stating that an ALJ's hypothetical question need not include "every impairment alleged by a claimant," but only those that are "medically established."). Considering the ALJ's decision was consistent with the VE's answers to the interrogatories, the Court affirms the ALJ's alternative Step Five determination.

## V. CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision. An appropriate Order follows this Opinion.

Dated: October 31st, 2017

JOSE L. LINARES
Chief Judge, United States District Court